## CHARLES F. PATTON ET AL. *v.* NAPOLEON B. RUCKER.

Whether there be *any* evidence, is a question for the judge; whether there is *sufficient* evidence, is for the jury. (Paschal's Dig., Art. 1464, Note 562.)

If there be parol evidence conducing to prove a material issue in the cause, it is error to withdraw the case from the jury.

The fourth division of the 1st section of our statute of frauds reads: " Or upon any contract for the sale of lands, tenements, or hereditaments, * * * unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing, signed by the party to be charged therewith, or some person by him thereunto lawfully authorized." (Paschal's Dig., Art. 3875, Note 904.) The form of the memorandum is immaterial. A letter containing the necessary particulars is sufficient, but the letter must show a concluded agreement, not an open negotiation. And if the letters constitute a correspondence, the whole may be consulted, and the agreement or real understanding of the parties may be deduced.

But the court will not decree a specific performance upon a correspondence in relation to land, unless it can collect, upon a fair interpretation of the letters, that they import a concluded agreement.

To conclude such a contract by correspondence, the minds of the parties must not only meet, but they must meet in writing. That is, there must be a sufficient *proposal*, and an assent to that proposal.

N, at the request of J, wrote a letter to R, to know if he would sell the land in controversy, and on what terms; R replied, that he would take $450, upon an accepted draft on N & B, payable at ninety days. J drew the the draft, which N & B accepted, and N held it for R, to whom it was shown, and he said it was satisfactory. Both the letters of N and R may be consulted to determine what land was intended.

Not only the two letters, which describe the land and define the terms, must be taken together, but the draft drawn by J in favor of R, and accepted by N and his partner, must be considered in connection with the two letters, and each writing be allowed to explain the other, and the whole will be considered as if blended into one, and signed by the parties.

From the time of acceptance and the offer to deliver the draft to R, the contract became mutual. R could have enforced the payment, and J was entitled to a specific performance for the land.

Where there was no proof that, in pursuance of the agreement, the vendor put the vendee in possession, or authorized him to take possession, the latter cannot enforce specific performance on the ground of his own voluntary entry. (Paschal's Dig., Note 904.)

Where the defendant pleads the general issue, and denies the agreement *in toto*, he cannot plead that, if there was an agreement, it was not in writing. (Paschal's Dig., Note 904.)

APPEAL from Brazoria.   The case was tried before Hon. GEORGE W. SMITH, one of the district judges.

Napoleon B. Rucker was the owner of two hundred and fourteen and one-third acres of land, which Charles Patton and John Jones wished to purchase, because it adjoined the plantation of Jones. They proposed to purchase it, and to give the acceptance of Nash, Barstow & Co., at ninety days, for $450, for the land.  Rucker, learning this by a letter from Nash, wrote Nash a letter, in which he agreed to these terms, and instructed Nash to carry out the trade. This was on the 7th December, 1857.  The next day, the plaintiffs being notified, they drew their draft in favor of Rucker on Nash, Barstow & Co. for the $450, which the latter accepted, and the plaintiffs, Patton and Jones, went into possession.   A few days afterwards, Nash showed Rucker the acceptance, whereat he expressed himself satisfied, and promised to make a deed as soon as he could get his title papers from one Prewitt; but he delayed, and when the deed was demanded he refused to execute it.

The plaintiffs sued Rucker, averring these facts, and charging that Rucker had both the letter and draft; that at its maturity they had cash in the hands of the acceptors to pay it; and they tendered the $450 and interest, and

demanded a specific performance; that is, a deed for the land. Rucker, in his answer, denied all about the contract, and that he had ever received the draft or anything else in payment, and he charged that the said Patton and Jones had taken forcible possession of his land, for which he charged rent at $200 per annum. But Nash swore that he wrote Rucker a letter to know if he would sell the land; that Rucker replied by letter, authorizing him to sell; that he still had the letter, but it was mislaid; that he informed Patton and Jones, and they acted on the offer, and drew their draft, as hereinbefore stated; that he showed Rucker the draft, and he approved it; but the draft and blank deed were still in the possession of Nash. Barstow, the partner of Nash, proved the contents of the letter, and that Rucker, was shown the draft. Jones agreed to sell the land to one Vincent, who built some cabins on the land, cleared five acres, and cultivated it one year; being then notified by Rucker that he had refused to agree to the terms, Vincent called upon Nash and read the letter, and he declined to carry out his negotiation with Jones for the land. The defendant offered no evidence, except one witness, who swore that the letter read, "I will take $450 for the land;" no more, no less, was in the letter. Both this witness and Vincent doubted if the word "dollars" was there. About this they were not sure. Nash kept no copy of his letter which called forth the reply.

Upon this statement of facts the judge charged the jury as follows: "The plaintiffs failing to show by written evidence any contract of purchase from defendant, and also failing to show they are entitled to have a conveyance decreed them on account of a verbal purchase of the land from defendant, you will find a verdict against the plaintiffs' claim for the land sued for.

"The defendant claims rent for the use of the place, and you are charged that if the plaintiffs, or any person under them, entered upon the land and cultivated it in faith of a

verbal sale or purchase made with the consent of Rucker, then, so long as the land was used in faith of the contract, you should not allow any pay for rent or use of the premises. But if they entered upon the land, or any other person did with their permission, without any contract, verbal or written, with Rucker or his duly authorized agent, then you should hold the plaintiffs responsible as trespassers, and render a verdict in favor of the defendant for the use of the premises by the plaintiffs, according to the proof in the case."

The court refused all counter-instructions which looked to a specific performance on the case made. The jury found for Rucker the "land in suit and $50 damages," for which there was judgment, and from which the plaintiffs appealed.

*Thomas G. Masterson,* for appellant, stated the case very clearly, and cited 1 Pars. on Cont., 400; 2 Pars. on Cont., 285, 290, 545; Sug. on Vend., 97; 2 Kent Com., 510; Bullard v. Walker, 3 Johns. Com., 60; 26 Wend., 341.

But if the court should hold that the memorandum in writing was not sufficient, then we are entitled to a verdict, under the verbal contract made between E. D. Nash, acting as the agent of Rucker, and Patton & Jones, because they complied with the agreement, and went into the possession of the place under the agreement. Rucker will not be permitted to deny Nash's authority, for the reason, that a short time after Nash made the sale, he (Rucker) ratified all that had been done in relation to said sale. And this ratification refers back to the inception of, and embraces the entire contract, from the making of the proposition to the receiving of the draft (accepted) in satisfaction, and the refusal of Rucker now to comply is an attempt on his part to commit a fraud upon the vendees, they having fully complied with their part of the contract. (Brock v. Jones, 16 Tex., 461; 6 Wend., 112; Story on Agency, §

244; Smith v. Smith, 1 Rich. Eq., 130; 2 Story Eq., § 763.)

*Munson & Lathrop,* for appellees.—Our statute of frauds requires that, in contracts for the sale of land, there shall be some memorandum thereof in writing, signed by the party to be charged therewith, or by some person thereunto lawfully authorized. (O. & W. Dig., Art. 936.) In this case, the appellants have shown no contract or memorandum in writing with appellee for the sale of the land, either signed by himself or any one authorized by him. And they have in no way shown that there was any privity of contract between the plaintiff and defendant.

The instruction was correct. (10 Tex., 116, 137; 9 Tex., 372.)

COKE, J.—In this case the jury was instructed by the court, that the plaintiffs having failed to show by written evidence any contract of purchase, and having failed to show themselves entitled to a decree on account of a verbal purchase, they must find for the defendant. This instruction is assigned as error. We are of opinion that the assignment is well taken. While it is prohibited to the court to charge or comment upon the weight of the evidence, it is proper and legitimate, where there is no evidence upon a given issue, so to instruct the jury. Whether there is any evidence, is a question for the judge; whether there is sufficient evidence, is a question for the jury. (Com. of Carpenters v. Haywood, Doug., 375; Jewell v. Parr, C. B. Doug., 909; Austin v. Talk, 20 Tex., 164; Andrews v. Smithwick, 20 Tex., 118; Mitchell v. De Witt, 20 Tex., 299; Reid v. Reid, 11 Tex., 593.) The correctness of the charge, then, depends upon whether there was evidence conducing to prove either one of the propositions relied on by the plaintiffs as entitling them to recover. If there was such evidence, although it might, in our judgment, be entirely

insufficient, the judgment should be reversed for the error of withdrawing it from the consideration of the jury, who were the only proper judges of its sufficiency. (Rogers v. Brodnax, 24 Tex., 543.)

The plaintiffs rely on the letter written by Nash to Rucker, inquiring the terms on which he would sell the land in controversy; the letter written in reply by Rucker, stating his terms; their acceptance of the proposal by drawing the draft for $450 on Nash & Barstow, in compliance with Rucker's terms, and its delivery to Nash, who is alleged to have been Rucker's agent for that purpose, as entitling them to recover in this action. It is insisted, in their behalf, that these written documents, considered together, with reference to each other, do furnish evidence of a valid contract for the sale of the land. The form of a memorandum in writing, necessary to take a case out of the operation of the statute of frauds, is immaterial. A letter properly signed, and containing the necessary particulars of the contract, is sufficient. But it must be such a letter as shows an existing and binding contract, as contradistinguished from a pending negotiation, a concluded agreement, and not an open treaty, in order to bind the party from whom it proceeds. So a correspondence consisting of a number of letters between the parties may be taken together, and construed and considered with reference to each other, and the substantial meaning of the whole arrived at; and if, when thus blended, as it were, into one, and the result is ascertained, it is clear that the parties understood each other, and that the terms proposed by one were acceded to by the other, it is a valid and binding contract, and may be enforced. If the substantial terms are sufficiently expressed, collateral circumstances, not contradicting but consistent with them, may be supplied, as virtually comprehended in the agreement expressed. (Browne on Stat. Frauds, secs. 346–350, 352; Barry v. Coombe, 1 Pet., 640; Stratford v. Bosworth, 2 Ves. & Beame Ch., 345; Gaunt v. Hill, 1

Stark., 10; 16 Wend., 28.) But, as was said in Huddleston v. Briscoe, 11 Ves., 583: "The court is not to decree specific performance, unless it can collect, upon a fair interpretation of the letters, that they import a concluded agreement; if it rests reasonably doubtful whether what passed was only treaty, let the progress towards the confines of agreement be more or less, the court ought rather to leave the parties to law, than specifically to perform what is doubtful as a contract."

In order to their enforcement by the courts, contracts for the sale of land must be evidenced by writing. When the writing relied on contains within itself all the particulars of a concluded contract, it is sufficient if it be signed by the party against whom it is sought to be enforced; but if, instead of being evidence of a concluded agreement, whatever may be its form, it is really a mere proposal, such a writing is turned into an agreement, and can be enforced in equity by the other party only by his acceptance of it in writing. A proposal by one party, and an acceptance of that proposal according to the terms of it by the other, constituted a contract. It is not only necessary that the minds of the contracting parties should meet on the subject-matter of the contract, but they must communicate that fact to each other, so that both may know that their minds do meet, and it is then only that the mutual assent necessary to a valid contract exists, and not until then that the contract is concluded. (1 Pars. on Cont., 404–407; Eliason v. Henshaw, 4 Wheat., 225; Brisban v. Boyd, 4 Paige, 17; Hyde v. Wrench, 3 Beav., 334; Frith v. Lawrence, 1 Paige, 434; Palmer v. Scott, 1 Russ. & Myl., 394; Norton v. Mascall, 2 Vern., 24.)

An acceptance of a proposal to sell, in order to bind the maker of the proposition and conclude the contract, must be unconditional and unqualified. The exact terms of the proposition, without addition or variation, must be acceded to before the proposition is withdrawn; otherwise,

the maker of the proposition is not bound by the acceptance.

An application of these well-settled principles to the facts of this case will, in our opinion, clearly show that the court erred in its instructions to the jury. The proof shows that Nash, at the request of the plaintiffs, wrote a letter to the defendant, Rucker, to know of him if he would sell the land in controversy, and on what terms. It shows that Rucker replied by a letter, stating that he would take $450 in an accepted draft on Nash & Barstow, payable either at sixty or ninety days, but at which date is left in doubt by the testimony. The proof also shows that the plaintiffs promptly made the draft, had it accepted by Nash & Barstow, payable in ninety days, and placed in Nash's hands for Rucker.

The letter of the defendant, Rucker, proposing the terms on which he will sell, does not describe the land. This would be a fatal objection, and decisive against the right of the plaintiffs to recover, independent of every objection, were it not obviated by the proof, that Nash wrote a letter to Rucker, asking him if he would sell, and his terms of sale, of the land in controversy. The statute of frauds requires contracts of this character to be in writing. The object of the statute would be defeated, and the very evil intended to be provided against introduced and stimulated, if so material an ingredient in the contract as a definition and description of its subject-matter were allowed to be proved by parol. It has therefore been long since well settled, that parol proof is inadmissible for that purpose. (See authorities referred to *ante.*) But Rucker's letter, in reply to that from Nash, must be considered with it, and the two construed together, and when this is done there is no uncertainty as to the subject-matter of the alleged contract. These two letters, then, taken together, contain a proposal which includes everything necessary to a valid contract, if accepted in writing by the plaintiffs.

Was it so accepted? The plaintiffs drew a draft on Nash & Barstow, payable at ninety days, had it accepted, and placed it in Nash's hands for Rucker, to whom it was tendered. This draft must be considered in connection with the two letters. The three papers mutually explain and rely on each other, and when the meaning of each is extracted, with reference to the others, and the substantial result collected, and the whole considered, they blend into one and make up a concluded agreement, when the terms proposed by one are acceded to and accepted by the other, and the whole in writing, and signed respectively by the parties. In order to test the correctness of the charge of the court, which we have seen could only be correct in the hypothesis that no evidence was before the jury conducing to prove either a written or verbal contract of purchase which could be enforced, we have assumed as true all the testimony which goes to support the plaintiffs' claim, without adverting to any that might contradict it, and upon this assumption, to say the least, a strong case is made out for the plaintiffs—a case which it suffices for the disposal of this cause here to say the plaintiffs had a clear right to have submitted upon proper instructions to the jury, in order that they might, by their verdict, pass upon the sufficiency of the testimony. It cannot be denied (pursuing the assumption of the truth of the testimony offered by the plaintiffs) that Rucker, after the draft was made and accepted and presented to him by the plaintiffs, could, although they may have decided to withdraw from the contract, have held them to it, and, on a tender of a deed of conveyance to the land, have enforced its payment. He is as much bound as they were. The obligation is mutual, and was so from the time the draft was signed, accepted, and placed in his possession or within his control. If Rucker could have enforced the payment of the money, Jones and Patton have an equal right to recover the land.

We deem it unnecessary to discuss the other proposition

relied on by the plaintiffs, by which they contend that they are entitled, although there was no written memorandum of the contract of purchase, to specific performance of the verbal contract, by reason of the existence of facts which take the case out of the operation of the statute of frauds. There is not in the record the least particle of foundation for this proposition to rest on, and if this had been the only ground relied on by the plaintiffs for relief, there would have been no error in the charge of the court, and the judgment would have been affirmed.

The position assumed by the counsel for the plaintiffs in his argument, that the defendant is not entitled to invoke the aid of the statute of frauds in his defense, because he has not relied on it in his pleadings, is not correct. It is very true that, where a defendant admits an agreement, if he means to rely on its invalidity, because not in writing, he must say so in his pleadings. But where, as in this case, the defendant denies the agreement, he throws on the plaintiff the burden of proving a valid agreement, capable of being enforced. (Ridgway v. Wharton, 3 DeG., McN. & God., 689; Ontario Bank v. Root, 3 Paige, 378; 6 B. Monr., 104; 2 Pars. on Cont., 548, note.)

It is not deemed necessary to discuss the questions arising in this case further, as the conclusion we have arrived at disposes of it.

Because of the error in the ruling of the court the judgment is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.