TEXAS & PACIFIC RAILWAY CO. v. JOE JOHNSON.

Delivered November 14, 1896.

1. **Jurisdiction of Courts of Civil Appeals on the Facts.**
   See the opinion for a discussion of the jurisdiction of the Courts of Civil Appeals upon questions of fact, dissenting from the views of the Supreme Court.

2. **Incompetency of Railway Employe—Evidence of Knowledge Thereof.**
   See the opinion for evidence held sufficient to justify a finding that one railroad conductor had knowledge of the incompetency of another through whose recklessness he was injured.

APPEAL from Tarrant. Tried below before Hon. S. P. GREENE.

*Stedman & Thompson*, for appellant.

*F. E. Albright* and *Wynne, McCart & Booty*, for appellee.

On January 18, 1896, this cause was reversed and remanded by the Court of Civil Appeals, Hunter, Associate Justice, dissenting. 34 S. W. Rep., 186. Thereafter a motion to certify to the Supreme Court the point of dissent was granted. On this certificate, the Supreme Court held that there was error in the opinion of the majority of the Court of Civil Appeals, and directed that the judgment of the District Court be affirmed. 35 S. W. Rep., 1042. On October 3, 1896, in obedience to the mandate of the Supreme Court, an order of affirmance was entered. The opinions following are upon a motion for rehearing then made by the appellant.

STEPHENS, ASSOCIATE JUSTICE.—The judgment in this case was reversed at the last term on account of an erroneous charge, Justice Hunter dissenting. 34 S. W. Rep., 186. Upon motion of appellee the single point of dissent—whether that charge was erroneous—was certified to the Supreme Court for decision, but the opinion of that court leaves it still undecided, and holds the alleged error to have been immaterial. 35 S. W. Rep., 1042.

This course seems to have resulted from a misapprehension on the part of the Supreme Court of the real point of difference in this court, as will appear from the following quotation from Judge Brown's opinion: "The points of law involved in the certificate of dissent arise

upon the latter part of the charge as quoted above, and for convenience we will state the questions as follows: (1) Was there any evidence before the jury in this case which would have authorized them to find that, before the accident, Johnson knew of the recklessness and incompetency of Roberts as a conductor? If not, was there error in the charge of the court, if it be error, such as to justify a reversal of the judgment of the District Court?"

To which the following answer is given: "We answer the first question, that there was no evidence which authorized the court to submit a charge to the jury upon the hypothesis that Johnson knew of Roberts' reckless character as a conductor. It did not matter whether Johnson knew that Roberts would follow him on the train that night or not; for, if he knew that Roberts was to act as conductor upon the second section of that train, it not appearing from the evidence that Johnson knew of Roberts' reckless character, no other verdict could have been rendered, under the evidence, than that which was rendered by the jury. If, therefore, it be conceded that the court erred in that part of the charge which informed the jury that Johnson could recover, if he did not know that Roberts was to follow him on that night, it was an immaterial error, and did not justify a reversal of the judgment of the District Court."

The question thus propounded and answered by the Supreme Court is not, we think, the question upon which this court divided, and is not the question which this court intended to certify to the Supreme Court. We were all agreed, as appears from our fifth conclusion of fact, that whether Johnson knew of Roberts' incompetency was a controverted issue of fact, which should have been and was submitted to the jury. See Patton v. Rucker, 29 Texas, 402; Supreme Council v. Anderson, 61 Texas, 296; Fitzgerald v. Hart, 17 S. W. Rep., 369.

It may be, as the Supreme Court decides, that the evidence recited in that conclusion was not sufficient to justify the conclusion; but the fact remains that we did so conclude, and that, too, without dissent. As it was not the question certified, we did not undertake to set out all the evidence bearing on the issue, if indeed the issue is one within the jurisdiction of the Supreme Court at all, of which we will express our views further on. We only stated the prominent features of the evidence which seemed to us to tend in opposing directions upon the question. If Johnson had not denied knowledge of Roberts' incompetency, the fact that he had long known him and worked on the same division of the road with him, where his reputation for recklessness seems to have been so notorious, would, we thought, have justified the inference that Johnson, like the rest of the employes testifying, in fact knew of it. There were other circumstances not set out in said finding tending in the same direction. We did not think that a denial, however positive, of a deeply interested witness should be accepted as verity by a court and jury in the face of circumstances tending to impeach its truth.

But conceding that we were mistaken in this, what follows but that

we divided on, and hence certified to the Supreme Court, an immaterial issue of law.

In Mexia v. Lewis, 87 Texas, 208, Chief Justice Gaines says: "In order to authorize the certificate of dissent, the question upon which the judges disagree must be material to the decision of the case. If not material, this court acquires no jurisdiction of the appeal upon such certificate." See authorities there cited.

In Campbell v. Wiggins, 85 Texas, 424, it was held that the jurisdiction of the Supreme Court in case of dissent only extends to rulings in which all the judges of the Court of Civil Appeals do not concur.

If the evidence recited in the fifth conclusion of fact did not justify that conclusion, and if that conclusion was reviewable by the Supreme Court on writ of error, it may be doubted whether it was on certificate of dissent, seeing that we all concurred in the conclusion. To work a reversal, it is true, the charge complained of must not only have been erroneous, but the error must have been material. From the conclusion that it was erroneous, one member of the court dissented; but from the conclusion that the holding of the majority was "material to the decision of the case," there was no dissent.

Because both questions might have been brought before the Supreme Court on writ of error, does it follow that jurisdiction to determine both on certificate of dissent was conferred, when only one was certified? Appellee had his election of remedies, and chose that of certificate in preference to writ of error, which election would be final, if the Supreme Court acquired jurisdiction. Campbell v. Wiggins, 85 Texas, 451.

But, waiving the question as to jurisdiction upon this ground, we are further of the opinion that the question decided by the Supreme Court upon the certificate of dissent is one of fact, of which this court has final jurisdiction. We are aware, however, that such opinion involves a dissent, which is respectfully made, from the view taken by our Supreme Court of that question. Warren v. City of Denison, ·36 S. W. Rep., 404; Land Co. v. McClelland Bros., 86 Texas, 189, and several other cases including Insurance Co. v. Haywood, 88 Texas, 315.

The amendment to the Constitution creating this court and defining its jurisdiction, as well as that of the Supreme Court, not only limits the jurisdiction of the latter to questions of law, but, in reference to the former, expressly provides "that the decision of said courts (Civil Appeals) shall be conclusive on all questions of fact brought before them on appeal or error." Amended Constitution, art. 5, secs. 3 and 6.

Whether the evidence in this case raised the issue of appellee's knowledge of the incompetency of Roberts as a conductor, is a question brought before us on appeal; and if it be a question of fact, our decision of it is conclusive, if the Constitution, which the oath of office binds us to uphold, is to govern.

The view entertained by the Supreme Court seems to be this: Whether there is any evidence in the record of a fact sought to be established, is

a question of law; but where there is such evidence, its sufficiency or insufficiency is a question of fact. See cases last cited.

Is this distinction sound? It doubtless had its origin, and quite naturally, in the view correctly taken and long held of the relative functions of the trial judge and jury, which is thus succintly stated by Justice Coke in Patton v. Rucker, 29 Texas, 402: "Whether there is any evidence, is a question for the judge; whether there is sufficient evidence, is a question for the jury."

Does it follow, that because the trial judge must determine whether there is any evidence of a fact, the question is one of law? By no means. It becomes his duty, in presiding at the trial and in reviewing the evidence on motion for new trial, to determine many questions of fact. Where there is conflict, he must take the finding of the jury. When he determines that the evidence does or does not raise a given issue, and accordingly submits it or withholds it from the jury, he determines a question of fact, which may also be brought before the Court of Civil Appeals on appeal.

Such question is determined, both in the trial court and on appeal, by an examination of the evidence produced, and not by either court's knowledge of the law. How can that be a question of law which is determinable only by such an examination of or search for facts? Whether there is evidence at all, or how much, though not the same question, are nevertheless questions of the same nature; and the same method of investigation that determines the one will determine the other. Whether a bushel of chaff contains a single grain of wheat, or many grains, or none, is ascertained in the same way.

So, to find whether a voluminous statement of facts contains any evidence on a given point, or much, or none, we have but to read it. It is not determined by consulting the law authorities. Indeed, it has been our opinion from the beginning that it was the intention of the amendment to the Constitution to relieve the Supreme Judges of the drudgery of reading the records, except, possibly, to better enable them to understand the points of law to be decided; and that the conclusions of the Courts of Civil Appeals as to what the evidence proved or tended to prove, or did not prove or tend to prove, should be binding on the Supreme Court.

True, it was thought unreasonable in Land Co. v. McClelland Bros., supra, that the Supreme Court should be bound by a possible finding of the Court of Civil Appeals that black is white; and it would be so, had not the Constitution made such a thing possible. It would be equally unreasonable for the Supreme Court to bind the parties by a possible, though a quite improbable, finding that white is black. But final jurisdiction of the facts must be lodged somewhere, and in lodging it with the Court of Civil Appeals it was probably thought that a majority of the judges of that tribunal might be trusted to finally decide such questions.

By what is said above it is not meant that the Supreme Court cannot

look to any fact in the record except what is stated in the findings of the Courts of Civil Appeals, but only that when such finding is made the Constitution makes it conclusive, whether it rests on conflicting evidence or no evidence. Where no such finding is made, and there is a total absence of evidence, or the evidence is undisputed, the Supreme Court may determine questions of law in the light of these facts; and it is not incumbent on the Courts of Civil Appeals to make findings in such cases. Nor is it to be presumed that they will make findings without evidence or against the evidence; but should they do so, it amounts to a holding by them upon the facts that there is evidence to justify such conclusions, and as it falls within their jurisdiction such determinations become final.

It is not so with a jury verdict, because that is subject to review, under the law, by the trial judge in the first instance and by the Court of Civil Appeals in the second, but by the Supreme Court not at all.

The view here expressed seems also to be sustained by authority. Under a statute of Indiana providing that, "The prosecuting attorney may except to any opinion of the court during the prosecution of the cause, and reserve the point of law for the decision of the Supreme Court," it was several times held that it was only upon some matter of law that the State was allowed an appeal; and the distinction between a question of law and a question of fact was likewise repeatedly and clearly set forth.

In the case of The State v. Hall, 58 Ind., 512, it was said: "In the case before us there was an agreed statement of facts filed, on which the cause was submitted for trial; but still it was a question of fact whether upon the agreed statement the defendant's guilt was established."

In the case of The State v. Campbell, 67 Ind., 302, the court instructed the jury to return a verdict of not guilty, and the State appealed. The Supreme Court say: "The charge was equivalent to a statement by the court to the jury that there was no evidence tending to show that the assault and battery charged was perpetrated by the defendant with an intent to kill," etc. "We have no doubt, if there was no evidence tending to prove the intent charged, that the court had a right to give the charge and direct an acquittal." And further: "We might look into the evidence, which is contained in the record, and say whether, in our opinion, there was or was not any evidence tending to establish the intent charged, and therefore whether, in our opinion, the charge was or was not correctly given. But in so doing we should be deciding a question of fact rather than one of law, for the correctness of the charge depends upon the presence or absence of evidence tending to prove the intent charged in the indictment. And the question arises, whether an appeal lies to this court in such case. If the charge were not dependent upon the evidence for its correctness, an appeal would doubtless lie. But where we cannot pass upon the correctness of the charge without for that purpose passing upon the facts of the case, we

think an appeal by the State does not lie. It was not intended by the statute authorizing the State to appeal in cases of acquittal (2 Rev. Stats., 1876, p. 405, sec. 119) that this court should review questions of fact decided in the court below, but only questions of law. State v. Hall, 58 Ind., 512; State v. Valkenburg, 60 Ind., 302."

The opinion in the case of The State v. Overholser, 69 Ind., 144, is to the same effect.

In the case under consideration, the question which arose in the trial court and in this court was, whether the evidence tended to show that appellee had knowledge before the accident of the character of Conductor Roberts; and that question, according to the view repeatedly taken by the Supreme Court of Indiana, was a question of fact, of which the amendment to the Constitution gives this court final jurisdiction.

But, notwithstanding these views, feeling constrained to yield prompt obedience to the mandate of the Supreme Court, we entered their decision on certificate of dissent as the judgment in the case, thereby affirming the judgment below.

We are now asked to reconsider that action, and also to supplement (manifestly in connection with the sixteenth ground of the motion for rehearing) our fifth conclusion of fact by adding the following finding, which, in justice to appellant, we do: "Frank Witherspoon, a witness for plaintiff, on cross-examination stated that on a former trial of this case he testified that before the wreck occurred in which Johnson was hurt, he heard Johnson mention the reputation of Roberts as a reckless conductor; and that he further testified that he could not tell at the time of the second trial whether it was before or after the wreck 'that said conversation occurred, as it had been two or three years ago."

On this point Johnson testified: "I am satisfied that it was after the accident that I had a conversation with Witherspoon in regard to Roberts' reputation as a reckless conductor." He also testified: "I am satisfied that I never did recommend Roberts as a conductor to Ward. I recommended him as a brakeman." Ward, however, testified: "At the time I appointed him he was recommended as conductor by Mr. Joe Johnson. He had been associated with Johnson in running trains. He was braking for Johnson. Johnson was conductor and Roberts was braking under him."

We conclude, after carefully reconsidering all the circumstances, including his deep interest in the result of the suit, that the credibility of Johnson's denial of knowledge of the incompetency of Roberts as a conductor was not only fairly put in issue by the testimony, but also that a verdict finding either way upon that issue would not have been without evidence to support it. Indeed, whether that denial was reasonable and true, in view or all the circumstances, was one of the main issues of fact in the case. It was so treated by the trial judge, and it is so considered by us.

Our confidence in the correctness of this conclusion is not affected by

the further statement of Witherspoon in cross-examination that he made "another statement" after the statement first made, the precise nature and time of which other statement he does not mention. It yet remained a question for the jury to determine whether the statement was true as first sworn to by him, while the conversation was of more recent occurrence and naturally better fixed in his memory.

Our reports contain numerous cases in which verdicts against railway companies have been upheld against the positive testimony of the employes testifying for such companies. The same rule, of course, would have to be applied to a verdict in favor of such companies, though at variance with the testimony in his own behalf of an employe suing.

Circumstances may be relied on to impeach positive declarations. Cheatham v. Riddle, 12 Texas, 112; Dyer v. Bassett, 63 Texas, 277; Biering v. Bank, 69 Texas, 602.

Where there is any evidence tending to prove a given issue, it is for the jury and not the judge. See cases first cited in this opinion.

We cannot escape the conclusion that one phase of the evidence in this record at least tended to show that if Roberts' character was that of a reckless conductor, Johnson must have been acquainted with it. We are also still of opinion that the charge submitting this issue was erroneous, for reasons stated in our original opinion. The majority founded their view of this charge upon the conclusion, announced without dissent, that the knowledge by Johnson of Roberts' incompetency was a controverted issue.

The remaining question for decision then is, should we grant the rehearing prayed for?

It follows from what has already been stated, that if left to our own interpretation of the law and facts, uninfluenced by the opinion and mandate of the Supreme Court, the decision of this question would be made in the affirmative; and inasmuch as that opinion rests upon a partial and imperfect statement of the facts, as contained in our original fifth conclusion, we have felt inclined to so hold. But after a careful consideration of the scope of the opinion and the language of the mandate itself, we have concluded that the Supreme Court in the decision rendered took into consideration, not only the additional facts and circumstances above quoted, but the entire statement of facts; and that it is not for this court to determine whether in so doing the Supreme Court exceeded its jurisdiction. We have, however, deemed it proper to express at some length the views we entertain of the jurisdiction of this court.

But, whatever our own views, we do not feel at liberty to disregard the express command in this very case of the highest judicial tribunal in the State. We have therefore concluded, in deference to that authority, that the rehearing should be denied. In this conclusion Justice Hunter concurs, but not in the views expressed in this opinion.

HUNTER, ASSOCIATE JUSTICE, Dissenting.—I concur in the action

of the majority in overruling the motion for rehearing in this case, but in nothing else contained in their opinion.

I cannot concur in the additional conclusion of fact found by them, to the effect that there is legal evidence in the record to support a verdict finding that Joe Johnson had knowledge, or had been informed, of the reckless character or reputation of Roberts as a conductor, prior to the accident in which he received his injuries. There is no evidence in the record, in my opinion, to support this conclusion.

Frank Witherspoon's evidence on that subject is on page 55 of the transcript, and is as follows: "I testified on the other trial of this case, at a former term of this court. I testified then that Roberts, the conductor in charge of the other train, had a reputation of being a reckless conductor. He has got the reputation. When first on the stand at the former trial, I testified that before this wreck occurred in which Johnson was hurt, I heard Johnson mention that reputation of Roberts as a reckless conductor. I made that statement. I made another statement afterwards." Re-direct examination: "I made a statement that Johnson and me had a conversation about that, about Roberts being a reckless conductor, before the accident. Well, I could not tell exactly now whether it was before or afterwards. It has been two or three years ago. Cannot say now whether this statement I had with Johnson as to Roberts being a reckless conductor was before or after Johnson was hurt."

The majority of this court, in their opinion on this motion, after quoting substantially Witherspoon's evidence bearing on the question, raises a new issue not involved in any assignment of error made by appellant, or in the certificate of dissent, and that is the credibility of Johnson. He stated: "I am satisfied that it was after the accident that I had a conversation with Witherspoon in regard to Roberts' reputation as a reckless conductor." Johnson in another part of his testimony denies emphatically that he knew or had ever heard of Roberts' reputation as a reckless conductor prior to the accident. It will be observed that there is no contradiction in the evidence of Johnson and Witherspoon, and that referred to by the majority arising out of the evidence of Johnson and Ward has no reference to the issue in controversy, and is not material thereto.

This is all the evidence in the record tending to establish that Johnson either knew or had been informed of Roberts' reputation for recklessness prior to the accident, and I think it amounts to absolutely no legal evidence. It might raise a suspicion that Witherspoon had made a mistake in a first statement he made on a former trial, but he explains by stating that at that time he "made another statement;" and the inference is clear that he was recalled to the stand and corrected his first statement before the evidence was closed. At all events, he refuses to testify that the statement first made by him was true, but distinctly states on this trial that he does not know whether the conversation with Johnson was before or after the accident. I am unable to understand

how such evidence as this can be relied on by any court to support any finding or verdict.

In the original opinion in this case, the majority of this court (myself dissenting) based its decision of this question on the fact that Roberts' general reputation for recklessness was competent and sufficient evidence to support a finding by the jury that Johnson knew of this reputation, while I held that it was not. The Supreme Court having sustained my opinion on this point, the majority now seek to base an additional conclusion of fact upon evidence less reliable and more objectionable, if possible, than evidence of general reputation.

Our Constitution provides that the findings of fact by this court are conclusive upon the Supreme Court, and it is therefore of the utmost importance to all that such findings shall be supported by sufficient competent evidence. I think it is a question of law whether there is any competent and legal evidence to support a conclusion of fact found by this court; and where a dissent in this court against such a conclusion is based upon such grounds, I think it raises a question of law, and is one, if not the only, way in which the Supreme Court can be required to examine the statement of facts. So believing, I feel warranted in entering this dissent, because I think there is absolutely no legal or competent evidence to support this additional conclusion found by the majority on this motion.

*Rehearing denied and judgment affirmed.*