**DONADA v. POWER. (No. 5579.)**

(Court of Civil Appeals of Texas. San Antonio. Feb. 9, 1916. On Motion for Rehearing, April 12, 1916.)

1. LANDLORD AND TENANT ☞22(2)—LEASES— CONSTRUCTION—SUPPLEMENTAL AGREEMENT.

A lease of irrigated land providing, "in case lessees take more than 20 acres within six months, the parties to enter into a supplemental contract to evidence same," construed to be an offer to lease, and not effective as a contract until accepted.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 55; Dec. Dig. ☞22(2).]

2. LANDLORD AND TENANT ☞25(5)—LEASES— VALIDITY—ACCEPTANCE.

Taking possession of land by the lessee after an offer to lease it to him is an acceptance of the offer as binding on him as an express verbal acceptance.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 73–75; Dec. Dig. ☞25(5).]

3. LIMITATION OF ACTIONS ☞27—LEASE NOT IN WRITING.

Under the statute of limitations the right to remit under a lease not in writing is barred if suit is not commenced in two years after it accrues.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 132, 133; Dec. Dig. ☞27.]

4. APPEAL AND ERROR ☞1151(2)—DISPOSITION — MODIFICATION — AMOUNT OF RECOVERY.

Error in allowing damages barred by a statute of limitations may be corrected by an appellate court without remanding the case.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4498–4500, 4503–4505; Dec. Dig. ☞1151(2).]

5. APPEAL AND ERROR ☞843(2)—DISPOSITION —MODIFICATION.

Where a judgment must be reversed in any event, an appellate court will not itself undertake to estimate the amount of excess damages in the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3331, 3338; Dec. Dig. ☞843(2).]

6. APPEAL AND ERROR ☞882(12)—REVIEW— PARTIES ENTITLED TO ALLEGE ERROR—ERROR COMMITTED.

One is precluded from urging error in a charge which is almost a literal copy of a special charge asked by him.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3602; Dec. Dig. ☞882(12).]

7. DAMAGES ☞214 — PROCEEDINGS FOR ASSESSMENT — INSTRUCTIONS — REDUCTION OF DAMAGES.

An instruction precluding recovery of any damages if plaintiff could have diminished them is error.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 542; Dec. Dig. ☞214.]

On Motion for Rehearing.

8. LIMITATION OF ACTIONS ☞24(2)—PARTICULAR ACTIONS—WRITTEN CONTRACTS.

A suit for the rent of acreage over 20 acres where a lease provided, "in case lessees take more than 20 acres within six months, the parties to enter into a supplemental contract to evidence same," and within the six months the lessees accepted the offer of more land by parol,

---

but made no written contract therefor, *held* a suit "where the indebtedness is evidenced by or founded upon any contract in writing" within the statute of limitations permitting such suits to be brought within four years.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 113; Dec. Dig. &⁓ 24(2).]

Appeal from District Court, Refugio County; John M. Green, Judge.

Action by J. F. Power against B. J. Donada. From judgment for plaintiff, defendant appeals. Reversed and remanded.

Dougherty & Dougherty, B. D. Tarlton, Jr., and H. S. Bonham, all of Beeville, for appellant. Wilson, Dabney & King, of Houston, and J. Turner Vance, of Refugio, for appellee.

MOURSUND, J. Appellee, Power, sued appellant, Donada, to recover rents alleged to be due under a written contract which reads as follows:

"The State of Texas, County of Refugio.

"Know all men by these presents that we, James F. Power, of the one part, and C. P. Fox and B. J. Donada, of the other part, witnesseth:

"The party of the first part is preparing for irrigation purposes about thirty-seven acres of land hereinafter described, and he does hereby lease to the said parties of the second part twenty acres of the same with the privilege to the said second parties to lease all of said thirty-seven acres or any amount of same in excess of twenty acres that they may choose, provided they exercise said privilege of taking more than twenty acres within six months from this date; the rental of said twenty acres to begin when party of first part is ready to furnish sufficient water to irrigate the same; and in case second parties take more than twenty acres within said time (six months from date hereof), the parties hereto to enter into a supplemental contract to evidence the same. Said land is situated on the west side of the Mission river on the town tract of the town of Refugio, in said county of Refugio, about two and one-half miles below the said town of Refugio, the same being part of farm lots Nos. 57, of twenty-three acres, and 4, of twenty acres, and it is thought that said twenty acres or more may embrace parts of other farm lots belonging to party of the first part adjoining said lots 57 and 4. To further identify the land embraced in said twenty acres or more the same is declared to be the twenty acres or more adjoining the said Mission river, now cleared of brush and being prepared for irrigation purposes by party of first part.

"This lease is made for the period of five years from the date hereof, with the privilege to the parties of second part to renew this lease at the expiration of said five years for any period of time therefrom not to exceed five years from said date of the expiration of said first five years lease. Said parties of second part agree to pay a rental for said land at the rate of thirty dollars per acre per annum, payable semiannually.

"Party of first part, in consideration of said sum, agrees to furnish the following:

"(1) Having purchased suitable irrigation machinery, he agrees to have same placed in position at once and to furnish sufficient water at any and all times to irrigate said twenty acres or more.

"(2) To inclose said twenty or more acres with a substantial fence with twenty-four inch wire netting (to exclude all small animals) and two barbed wires stretched at top of fence, and to maintain the same during the period of this lease in good repair.

"(3) To furnish one or more main canals, as may be necessary, for the perfect irrigation of said land.

"(4) A substantial tenant house and suitable dwelling for extra workmen to be employed on the farm.

"(5) A substantial warehouse 20 feet by 40 feet, well ventilated.

"(6) A substantial pen for work animals, a proper shed in which to feed the same, and suitable place to store feed for said animals, and shed to protect machinery and implements.

"(7) The use of the pasture in which said farm is located to graze the necessary animals employed on the farm.

"(8) Parties of the second part are to have the use of all water supplied by said irrigation plant, and water shall not be furnished to others, or for other purposes, unless there is a surplus of water; that is, more water than said second parties need for their purposes of irrigation.

"Said parties of the second part bind themselves as follows:

"(a) They agree to admit said party of first part to partnership to the extent of one-third interest after the expiration of one year from date of this lease, in consideration of the total amount of the lease money to be paid as hereinbefore provided; that is, party of the first part shall become a full partner if he so desires, provided he makes no charge to parties of second part for lease of said land from the date he so enters said partnership. It being understood that in case the party of the first part elects to become a partner he is to share equally one-third interest without any expense for tools, etc., on hand at the time of his entrance to such partnership, but thereafter to furnish his pro rata for such tools, etc.

"(b) Parties of second part agree to pay the rental for said land promptly semiannually as it accrues, unless party of first part elects to become a partner, as before provided, when all further rental for this lease shall cease.

"(c) Parties of second part agree to furnish the necessary gasoline and lubricating oil with which to pump the necessary water for irrigation, but to be at no other expense in running or maintaining the irrigation machinery in repair, unless party of first part elects to become a partner as before provided, in which case all expenses of maintaining the irrigation plant are to be borne by all three partners.

"The parties of the second part shall have the first privilege to lease any other body of land that may be cleared and prepared for irrigation adjoining the said above thirty-seven acres.

"This lease is transferable, but should either of the parties of the second part, or all of the parties, should the said James F. Power become a partner as hereinbefore provided, desire to sell and transfer his interest, he binds himself to give his partner or partners the preference to purchase his said interest, provided the other partner or partners pay as much for such interest as is offered by any other bona fide prospective purchaser.

"A bona fide sale of his interest shall release such party selling his said interest from further liability under this lease.

"Witness our hands this 11th day of September, 1907.

"[Signed]    James F. Power,
"Party of the First Part.
"B. J. Donada,
"C. P. Fox,
"Parties of the Second Part."

On this contract is written an agreement reciting that it is supplemental to said contract, wherein it is stated that the rental of the 20 acres mentioned began on October 1, 1907. This agreement is dated February 20,

1908. Fox transferred his interest in the lease to Donada. Power never exercised his option to become a partner. Plaintiff alleged that Donada elected to use the entire 37 acres, and entered thereon, used and enjoyed the same under said contract; that the rentals under the contract amounted to $5,700; that on or about January 1, 1908, defendant, by verbal contract, leased from plaintiff 77 acres additional for a term of one year beginning January 1, 1908, and agreed to pay $6 per acre therefor, payable semiannually; that defendant paid plaintiff $1,500, the items and approximate dates being set out; that plaintiff in the beginning operated the machinery and pumped the water, but later on agreed with defendant that the latter should do so, and be paid by plaintiff for such work. Plaintiff alleged that under such agreement defendant was entitled to certain credits. The parties agreed upon this matter, the agreed credits being allowed, and therefore it will receive no further notice.

Defendant admitted the execution of the contract, but insisted that he was liable to plaintiff for rent on only 20 acres by virtue of such contract. He further alleged that he was liable for only the reasonable rental value of so much of the land as he actually used, and that this liability was subject to various set-off and counterclaims due him by reason of payments and by reason of work done and labor performed by defendant for plaintiff, and by reason of damages suffered through plaintiff's failure to comply with the obligations imposed upon him by the terms of said contract. Plaintiff denied the material allegations of defendant's cross-action, and pleaded the two and four year statutes of limitation. Defendant by supplemental answer invoked the two and four year statutes of limitation, and pleaded the existence of ambiguity in the contract.

The court construed the contract above copied as one for the lease of the 37 acres at the rate of $30 per acre per annum, payable semiannually, with a provision that the lessees need not take more than 20 acres under the lease, and submitted only the issues:

(1) "How much of the 37-acre tract contracted by the plaintiff to the defendant under the contract referred to above over 20 acres did the plaintiff furnish to the defendant, on the defendant's request, under and in accordance with the terms of this contract, and when?"

(2) "What amount of damage, if any, did the defendant suffer by reason of any breach by plaintiff of any obligation of his, imposed by the contract herein involved, on the plaintiff (if there was any such breach), to wit: (A) By his failure (if there was any failure) throughout the periods hereinafter stated to supply suitable machinery to furnish sufficient water as was necessary at all times to carry on the irrigation enterprise; (B) by his failure (if failure there was) throughout the periods hereinafter stated to furnish and inclose said land with a suitable fence, and maintain the same in good repair, with 24-inch wire netting, to exclude all small animals, and two barbed wires stretched at the top of the fence; (C) by his failure (if failure there was) to furnish one or more main canals as was necessary for the perfect irrigation of the land?—it being claimed by the defendant that the canals furnished were insufficient for the proper irrigation of the land; that is to say, damages within the following periods: (a) Between March 23, 1910, to March 1, 1911; (b) between March 1, 1911, and September 11, 1912."

In connection with these issues the court gave certain instructions which will be stated when the assignments of error relating thereto are discussed. The jury found that plaintiff furnished to defendant at his request, under the terms of the contract, 17 acres in excess of 20 acres out of the 37-acre tract, not later than January 1, 1908, and that defendant suffered no damages by reason of the matters alleged by him and submitted to them.

The court entered judgment in favor of plaintiff for $4,400, with interest thereon from March 26, 1915, at the rate of 6 per cent. per annum.

[1] The contract above copied is a contract for the lease of 20 acres of land for five years upon the terms and conditions therein stated, with an option to the lessee to take all or any part of 17 acres adjoining the same, upon the same terms and conditions, the lease thereof to expire when the lease of the 20 acres should expire, which option, it was provided, must be exercised within six months from date of said contract. The provision that, "in case second parties take more than 20 acres within said time (six months from date hereof), the parties hereto to enter into a supplemental contract to evidence the same," must be construed as a provision for an express acceptance of the offer, which acceptance would make a contract between the parties. To construe it as meaning that the lessor was merely contracting to enter into a contract without defining the terms upon which he was to be bound would be equivalent to eliminating from the contract all that was said with respect to the 17 acres; for an agreement to enter into a contract upon terms to be thereafter agreed upon would be a nullity.

Plaintiff alleged that the defendant entered upon the property "on or before the first day of October, 1907, and elected and agreed to use the whole 37 acres, and has been occupying, using and enjoying the same under this lease, and in accordance with its terms as stated above." In a supplemental petition it was alleged that such agreement and election was made within six months from date of contract. The allegation shows that a contract was made with regard to the 17 acres, whereby the same terms would apply thereto as applied to the 20 acres. Assignments Nos. 2 and 6 are therefore overruled.

[2] The stipulation that the lessee could within six months elect to take the 17 acres was a continuing offer on the part of the lessor, based upon a valuable consideration, to include said 17 acres within the terms of the lease contract for the 20 acres, condi-

tioned that acceptance be made within six months. The lessee, by verbally notifying the lessor of his acceptance of the offer within the stipulated time, could make it a valid contract, subject to such difficulties with regard to its enforcement as might be encountered if the statute of frauds should be invoked. We think that taking possession of the land by the lessee would be equivalent to an acceptance equally as binding on him as an express verbal acceptance. In the case of Patton v. Rucker, 29 Tex. 408, the court said:

"In order to their enforcement by the courts, contracts for the sale of land must be evidenced by writing. When the writing relied on contains within itself all the particulars of a concluded contract, it is sufficient if it be signed by the party against whom it is sought to be enforced; but if, instead of being evidence of a concluded agreement, whatever may be its form, it is really a mere proposal, such a writing is turned into an agreement, and can be enforced in equity by the other party only by his acceptance of it in writing. A proposal by one party and an acceptance of that proposal according to the terms of it by the other constituted a contract."

In the case of Foster v. Land Co., 2 Tex. Civ. App. 514, 22 S. W. 260, the Court of Civil Appeals of the Galveston District followed the Patton v. Rucker Case, but recognized the fact that there is strong reason and high authority to sustain the opposite view. The same court has recently adhered to its holding in said case. Daugherty v. Leewright, 174 S. W. 841. See, also, Lanz v. McLaughlin, 14 Minn. 72 (Gil. 55). The following cases reannounce the rule that, when the memorandum contains within itself all the particulars of a concluded contract, it need only be signed by the party against whom it is sought to be enforced: Morris v. Gaines, 82 Tex. 255, 17 S. W. 538; Morrison v. Dailey (Sup.) 6 S. W. 427; Ragsdale v. Mays, 65 Tex. 256; Hazzard v. Morrison, 130 S. W. 244, affirmed by Supreme Court 104 Tex. 589, 143 S. W. 142. If the rule announced in the case of Patton v. Rucker is applicable to contracts for the lease of land, it is clear that no action could have been maintained by appellant against appellee based upon the theory that there was a written contract for the lease of the 17 acres, unless he could show a written acceptance made within the six months.

[3-5] But, whether this could be done or not, it is clear that, in the absence of a written acceptance of the continuing offer to include the 17 acres within the terms of the lease contract for the 20 acres, there is no memorandum in writing of any contract for the lease of the 17 acres signed by appellant. It is true that, although appellant pleaded the statute of frauds, he does not upon this appeal urge any contentions based upon such defense, but he does urge assignments interposing the statute of limitation of two years. We think it is clear that the suit against appellant as to the rents for the 17 acres is based upon a contract not in writing, for a written contract cannot be shown by proof only of an offer in writing, and that therefore the two-year statute of limitations is applicable to the demand for such rents. Assignments Nos. 4, 5, and 21 relate to limitation as to the rents of the 17 acres, and must be sustained. The error in allowing that portion of said rents which became due more than two years before the suit was filed could be corrected by this court, but, as the judgment must be reversed on another ground, it will be unnecessary to undertake to estimate the amount of excess in the judgment.

As no issue is raised with regard to the statute of frauds, we will decide all questions submitted in appellant's brief upon the theory that there was an enforceable parol contract for the lease of the 17 acres for the period sued for by plaintiff. It follows that no error was committed by the court in sustaining an exception to that part of appellant's first supplemental petition in which he undertook to plead that he was only due plaintiff the reasonable rent on various portions of said 17 acres for small periods of time during which he alleged that he used the same. Assignment No. 1 is overruled.

Appellant admitted that he took possession of part of the 17 acres under the option given him, and the only issue was as to the number of acres he elected to take. This issue was submitted to the jury, and they found he took the entire 17 acres. While the court's description in his charge of the provisions of the lease contract is not correct, and is confusing in that it describes the contract as one for the lease of 37 acres, with provision that lessees need not take more than 20 acres, but if they should take more than 20 they should within six months exercise the privilege of taking more, and the first issue assumes there was a contract for 37 acres, still, as the jury was required to find only one fact, namely, how many acres appellant elected to take, we think the errors in the portions of the charge referred to would not require a reversal of the judgment. We do not see how it could be prejudicial to appellant, leaving out of consideration, as we must, all issues relating to the statute of frauds, if the court had instructed the jury specifically that there was a verbal contract between plaintiff and defendant as to such acreage out of the 37 acres which defendant elected to take, and for them to find, in addition to the 20 provided for in the contract, the number of acres in the additional tract so taken. Assignments 7 to 11, inclusive, are overruled.

[6] Appellant objects to the second issue on the ground that it submits in one complex, intricate mass practically the entire case, so far as made by the cross-action, and urges that this constitutes error in view of the fact that he requested that the case be submitted on special issues. It appears from the qualification of the bill of exceptions that the court had before him the defendant's excep-

tions to his proposed charge as well as all of defendant's special charges when he drew his charge. The contents of his proposed charge are not disclosed by the record. It appears that defendant requested a special charge couched in almost the identical language of the charge given by the court. The bill of exceptions shows that defendant excepted to such charge in spite of the fact that it was almost a literal copy of the special charge asked by him. We conclude that under the circumstances he is precluded from in insisting that the court erred in the method adopted in submitting the matters covered by the second issue. Assignments 12 and 13 are therefore overruled.

[7] Appellant also assigns error upon that portion of the court's charge which reads as follows:

"The defendant cannot recover damages (if any) by reason of any default of the plaintiff in regard to the matters complained of and mentioned above (if any there were) in any case to any extent where the accrual of such damages could have been prevented or diminished by reasonable exertions and by the use of ordinary care and reasonable expense on the part of the defendant."

This charge was excepted to in the trial court on various grounds. One was that it denied the defendant the right to recover the amount it would reasonably have cost him to prevent or diminish the injuries complained of. Another was that it did not allow defendant to recover such damages less the diminution that defendant could have brought about. It appears that defendant requested the court to give a special charge on this issue, which was not subject to the two objections above set out, made by him to the court's charge. We conclude that the court erred in giving the charge, and that such error is a very material one; for the charge precluded any recovery if defendant could have diminished the damages. The fifteenth assignment of error therefore is sustained.

Appellant by his fourteenth assignment contends the court erred in giving the charge above copied and held to be erroneous, because the plaintiff failed to plead that defendant by the exercise of reasonable care could have prevented or diminished the damages. He contends that, although he did not object to the charge on such ground, and in fact asked a charge on the subject, he can take advantage of the giving thereof as a fundamental error. Having held it was an erroneous charge, it becomes unnecessary to say anything in regard to whether it was fundamental error to give the same in the absence of pleadings raising the issue. But in view of another trial we call attention to the fact that this court has recently held that such an issue cannot be raised under a general denial, but must be specially pleaded by the party who has breached the contract. World's Special Films Corporation v. Fitchenberg, 176 S. W. 733.

Appellant contends that his exception urging the statute of limitations to that portion of the petition in which plaintiff sought to recover rent due under a verbal contract for the lease of 77 acres of land should have been sustained, and by another assignment contends that the court erred in rendering judgment for such rent. Appellee virtually admits that he is not entitled to judgment for such sum, and answers the assignments with a denial that such sum entered into the judgment of the court. The judgment recites that plaintiff should recover rent for 74 acres at $6 per acre, with interest thereon at the rate of 6 per cent. per annum from January 1, 1909, to date of judgment; but, after summing up the various amounts due plaintiff, said judgment contains a proviso to the effect that the allowance of all of such sums is subject to the limitation pleaded and the deductions to be made on account thereof, as well as the credits admitted. It is further recited that after making such deductions and credits plaintiff is found entitled to recover $4,400, and said sum is awarded, with interest. The court fails to explain how he arrived at this amount, and neither side has undertaken an analysis of the matter with the view of showing what items were finally allowed. We have gone over the matter, with the result that we are unable to find any basis for awarding $4,400 without allowing rent for said 74 acres. As the judgment must be reversed on another ground, and the case remanded, it would be profitless for us to explain how we arrived at such conclusion. Assignments Nos. 3 and 20 are sustained.

Assignments of error Nos. 16 and 17 are overruled.

In view of what has been said with regard to assignments 14 and 15, it becomes unnecessary to discuss assignments Nos. 18 and 19.

The judgment is reversed, and the cause remanded.

On Motion for Rehearing.

[8] Appellee contends that we erred in holding that the suit for rent, in so far as it relates to the 17 acres found by the jury to have been taken possession of by appellant in addition to the 20 acres covered by the original written contract, was for a debt "evidenced by or founded upon any contract in writing." Much is said about the statute of frauds, but it will be seen from our original opinion that the application of the statute of frauds was not sought by any assignment of error, and that what we had to say had reference solely to the question whether the two-year statute or the four-year statute of limitation applied to the claim for rent of the 17 acres. We find in Cyc. vol. 25, p. 1038, the following statement:

"The statutory description of an action as 'founded on an instrument in writing' refers to contracts, obligations, or liabilities growing, not remotely or ultimately, but immediately, out of written instruments. Parol acceptance of an offer in writing does not give rise to an agreement or contract in writing, within the meaning

of statutes relating to limitations governing actions on contracts in writing."

In this case appellee sued appellant to recover the amount of lease due for the 20 acres covered by the written contract copied in our previous opinion, and also for the amount alleged to be due for lease of the seventeen acres. While it is true that the written contract is a proposal to rent to appellant such part of the 17 acres as he may elect to take, it is also true that it is more than that; for it is a contract signed by appellant, in which he binds himself to pay at the rate of $30 per acre per annum for the 17 acres if he elects to take same, or for such part thereof as he may elect to take. The contract was completed as to the 17 acres by appellant's taking possession thereof. It may be stated that the suit for rent for the 17 acres is founded upon a written agreement to pay $30 per acre per annum for such part of said 17 acres as appellant should agree to take. It has been held in this state that a suit to recover the value of goods delivered pursuant to a written order is founded upon a contract in writing. Page v. Payne, 41 Tex. 143. And it was so held by this court, even though the order contained no promise to pay. Laredo Electric Light & Mach. Co. v. U. S. Electric Lighting Co., 26 S. W. 310. A view not in accord with the holding in the last-mentioned case may be deduced from the opinions in the case of Voelcker v. McKay, 61 S. W. 424; Voelker v. McKey, 60 S. W. 798.

It has been held that, where a change was made by verbal agreement in the quality of iron to be used in an iron fence contracted in writing to be erected, the suit nevertheless was upon the written contract, the court explaining its holding as follows:

"It was evidently intended that the services rendered should be controlled by the terms of the written agreement, and that the subsequent agreement changing the quality of the material should not have the effect to destroy the written contract." Hughes Bros. v. Smith, 83 Tex. 499, 18 S. W. 955.

It has also been held that a suit for the price of extras provided pursuant to a building contract which stipulated a certain price to be paid for the completion of the building according to specifications and for the payment "for all extras above the contract and for all changes that might be made in the plans and specifications" was governed by the four years statute of limitation. The court said:

"The fact that the extent of extras and changes in the plans were subsequently agreed to would create no new right or contract that was not fully provided for in the written contract. The making of such changes and extras is simply putting into operation a contingency that the parties contemplated might occur when they executed the contract, and for which they provided in this written agreement." Wilkinson v. Johnson, 83 Tex. 392, 18 S. W. 746.

See, also, Stringfellow v. Elsea, 45 S. W. 418; Sanborn v. Plowman, 20 Tex. Civ. App.

484, 49 S. W. 639; Fidelity & Casualty Co. v. Callaghan & Graham, 104 S. W. 1073. When the parties executed the written contract, they contemplated the contingency that appellant might take more land than the 20 acres, and provided in such contract for the payment of rent for such additional land, and also for obligations with reference thereto by appellant. The above cases indicate a tendency upon the part of our courts not to give a strict construction to the words "contract in writing" such as would classify all contracts as oral contracts which are partly written and partly oral, and we therefore hold that in this case the suit for rent of the 17 acres is governed by the four-year statute of limitations, and overrule assignments of error Nos. 4, 5, and 21. We realize that the question is one upon which legal minds may well differ, but believe that our decision thereof is in line with the views expressed in the cited cases.

The letter and advertisement relied upon by appellee speak for themselves. We cannot find therein any evidence that appellee accepted the offer to take the 17 acres. The same may be said concerning the cross-action, if, indeed, it can be considered.

We are unable to agree with appellee in his contention with reference to the other assignments of error sustained by us. The judgment reversing the judgment of the trial court and remanding the cause for another trial must therefore be permitted to stand. Our former opinion is modified as above indicated, but the motion for rehearing is overruled.