DAUGHERTY v. LEEWRIGHT.    (No. 6724.)

(Court of Civil Appeals of Texas.    Galveston.
Feb. 17, 1915.)

1. SPECIFIC PERFORMANCE ☞121—CONTRACTS —EVIDENCE.

In a suit for specific performance, evidence *held* to show that defendant did not agree to sell his land upon the terms insisted upon by plaintiff.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 387–395; Dec. Dig. ☞121.]

2. BROKERS ☞91 — AUTHORITY — EFFECT OF CUSTOM.

Where the authority of a broker, which was express and unequivocal, did not provide for the furnishing of an abstract by the vendor or the giving of it to the purchaser for his examination, a general custom among land dealers to that effect did not warrant the broker in contracting to do so.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 134; Dec. Dig. ☞91.]

3. FRAUDS, STATUTE OF ☞106 — CONTRACTS FOR SALE OF LAND.

Where a landowner executed and signed a written proposal for the sale of his property, there is no contract enforceable against him unless the purchaser in writing accepts the proposal; for it is not a memorandum of the terms of the sale within the statute of frauds (Rev. St. 1911, art. 3965, § 4).

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 193, 210, 211; Dec. Dig. ☞106.]

Appeal from District Court, Liberty County; J. Llewellyn, Judge.

Action by J. S. Daugherty against L. J. Leewright. From a judgment for defendant, plaintiff appeals. Affirmed.

E. B. Pickett, of Liberty, for appellant. Stevens & Stevens, of Liberty, for appellee.

PLEASANTS, C. J. This suit was brought by appellant against appellee to compel specific performance of a contract for the conveyance of a tract of 198 acres of land, and, in the alternative, to recover damages for the alleged breach of said contract by appellee. Plaintiff's petition alleges in substance: That on September 25, 1913, the defendant, acting by and through his duly authorized agent, D. L. Burch, entered into a written contract and agreement with appellant to sell him the tract of 198 acres of land described in the petition, for a consideration of $20 per acre, payable one-half cash, and the remainder in three equal annual installments, with interest thereon at the rate of 8 per cent. per annum, appellant to assume a balance of the purchase money due on said land to the state of Texas, amounting to the sum of $400; that shortly after making said written contract, and on the same day, appellee through his said agent agreed to furnish appellant with an abstract of title to said land and allow him 30 days for examination thereof if appellant would then pay him the sum of $100, the balance of the cash payment for said land to be made in 30 days; and that this agreement was made in the presence and with the knowledge of appellee. It is then alleged that plaintiff paid the $100 to appellee's said agent, but that appellee declined to accept same, and refused to carry out his said contract. Plaintiff also pleaded that it was necessarily implied as a part of the contract for the sale of the land that the appellee, the seller, would furnish abstract of title, and would allow the purchaser a reasonable time to examine same, and that this was the general and usual custom at that

time in Liberty and Harris counties in the sale of lands in said counties, and said custom generally prevailed throughout said counties, and that 30 days was a reasonable time to allow for the examination of an abstract of title in such cases.

In the eighth paragraph of the amended petition the plaintiff in the alternative alleged that, if it should be determined that the said Burch, in participating in the said transaction alleged, was not the agent of defendant, but acted in such matters as the agent of the plaintiff, then only in the event that it be so determined that said Burch was not, in fact, the agent of the defendant, but was, in fact, the agent of plaintiff, when he acted in the transaction, the plaintiff alleged that the defendant, acting for himself, made and entered into with plaintiff the contract above set forth.

The defendant in his answer denied that the contract had been entered into as alleged by plaintiff, and denied that it was implied that the defendant would furnish the plaintiff with an abstract of title, or that he ever agreed expressly or impliedly to accept $100 as earnest money and allow plaintiff 30 days or a reasonable time within which to examine the title, and further denied that he authorized D. L. Burch to act for him as his agent in any manner, or to furnish an abstract of title. The defendant also denied any knowledge of $100 received by D. L. Burch, and denied that he ever authorized Burch to accept said amount of money.

The ninth paragraph of the defendant's answer was as follows:

"The defendant now says and alleges, in answering paragraph 8 of plaintiff's amended petition, that he believes, and so charges, that the plaintiff, J. S. Daugherty, and D. L. Burch conspired and acted together in an effort to compel this defendant to convey said tract of land upon other terms and conditions which were not agreed by this defendant, and that, in truth and in fact, said D. L. Burch never was the agent of this defendant, and this defendant denies that he ever authorized him so to act, but, in truth and in fact, he was the agent of plaintiff, and that he was receiving some compensation unknown to this defendant from plaintiff in the event that he consummated a purchase of said land from defendant. Defendant admits that he is the owner of the land described in plaintiff's amended petition, and that he was, on the 15th day of September, A. D. 1913, and prior thereto, owning and holding and enjoying the same as his homestead, and that on or about the 25th day of September, A. D. 1913, this defendant was desirous of locating permanently in North Texas, and there acquiring a new homestead, but, in order to get the home he wanted in North Texas, it was necessary that a quick sale of his Liberty county homestead be made, and that he at that time was willing to sell said tract of land in Liberty county, described in plaintiff's amended petition, for $20 per acre net to him, and that he was willing to take one-third cash and the balance in three annual payments bearing 8 per cent. interest, but that he only offered this land for sale at that price and on those terms for a period of four days, and that he offered to sell same to D. L. Burch and plaintiff, J. S. Daugherty, at $20 per acre, one-third cash and the balance in three equal payments at 8 per cent. interest, but that said D.

L. Burch failed and refused to pay this defendant one-third of the contract price, whereupon he stated to them that, unless they paid him in cash one-third of the total consideration, the deal would be declared off, and that it was mutually agreed and understood by and between the plaintiff and his defendant that the deal for the purchase by the plaintiff of this tract of land from the defendant was at an end, and this defendant avers that the plaintiff nor D. L. Burch never tendered to him an amount of money equal ·to one-third of the total consideration for said tract of land, which consideration was to be $20 per acre net to the defendant. This defendant now invokes the aid of article 3965, § 4, of the Revised Statutes, and says that he never entered into a written contract, nor agreed by a memorandum in writing to convey said tract of land to said plaintiff according to the terms and conditions as alleged by plaintiff, nor did he authorize in writing, or verbally, the said D. L. Burch to act for him in entering into any such contract with the plaintiff."

Plaintiff by supplemental petition denied the several averments of defendant's answer before set out.

The trial in the court below resulted in a verdict and judgment in favor of defendant. The facts shown by the evidence adduced upon the trial are as follows: A day or two before the 25th day of September, 1913, D. L. Burch informed appellee that he thought he had a buyer for his land, and appellee told him to go ahead, and if he could make a sale of the land it would be all right with him. After this conversation Burch, on September 25th, sent his wife to appellee to ascertain if he ·still wanted to sell his land. Appellee, in response to Mrs. Burch's inquiry, executed and delivered to her the following instrument for delivery to her husband:

"Dayton, Texas, 9—25—1913.

"This is to certify that I, L. J. Leewright, agree to sell all of that tract of land in section 1008 belong· to me being 198 acres for the sum of 20 dollars per acre net to me, terms as follows one third cash in hand and the balans in three annual payments bearing 8% interest.

"[Signed]                          L. J. Leewright."

After this writing was obtained from appellee by Burch, he wrote appellant offering the land for sale as follows:

"Sept. 26th, '13.

"Mr. J. S. Daugherty, Houston, Texas—Dear Sir: I drop you a line this morning telling you that I have made the deal with Mr. L. J. Leewright for his land he says you can have it at 20/00 per acre net to him turms as follows, one third Cash in hand and balance in three annual Payments being 8% interest.

"Please let me no at once if you want the land 196 acres section 1008 as I may be able to sell it to the man in Stilson he wanted ours and oblige.                          Mr. D. L. Burch.

"Mr. Daurghty.

"Mr. Leewright say their is $400 dollars against the land off state money and he says that is to be above the 20 dolrs net to him.

"Please let me hear from you at once."

The offer so made by Burch to appellant was accepted by telephone conversation between appellant and Burch. At the time the offer was accepted it was further agreed between Burch and appellant that appellee would furnish appellant an abstract of title and allow 30 days for examination thereof. Appellant's testimony was:

"Mr. Burch called up by telephone and wanted to know whether I had received his letter or not, and I told him that I had, * * * and I asked him what about an abstract, and asked how long he would give in which to make the cash payment, * * * and I told him I wanted 30 days. He agreed that it was customary and would give it; that he would grant it. I told him then if he would do that I would take the land, and would put up $100 as a guaranty that I would take the land, and would make the cash payment within 30 days if the title was good, if the abstract showed a good title, and told him to bring Mr. Leewright up and let us enter into a contract completing this transaction or agreement. * * * Mr. Burch said he would see him and let me know. It wasn't a great while after that when Mr. Burch called me up again and told me Mr. Leewright did not want to come up. * * * I asked him whether or not he had stated to Mr. Leewright that he was to furnish an abstract of title and give me 30 days time in which to make the remainder of the cash payment, and he told me that he had. * * * I went to Dayton after having this conversation with Mr. Burch over the telephone, and Mr. Leewright and Mr. Burch met me at the station when the train that I went on arrived there. * * * After Mr. Leewright objected to the execution of it [a contract], and had left there, I signed the contract myself, and gave Mr. Burch the $100 in cash to tender the contract to Mr. Leewright and tender the $100 as purchase price, which I understood I agreed to pay in closing the transaction. Mr. Leewright never tendered me any abstract of title to the property, and never tendered me any deed to the property, but I was situated so I could have paid the balance of the purchase money according to the terms of the trade, and was willing to pay it, and am now. I am as well able now as I was then. * * * I asked Mr. Burch over the telephone whether he had expressed to Mr. Leewright what he was to give me—furnish me with this abstract and allow me 30 days' time in which to do this—and he said he had, and when I got there, he [Leewright] wouldn't do it, and I felt that Mr. Leewright hadn't treated me the correct way about it. * * * I am willing now to sign vendor's lien notes for the unpaid portion of this purchase money under the terms of the agreement with Mr. Burch, and will do so if Mr. Leewright will consummate the trade according to the terms of that agreement. Prior to going to Dayton there was nothing said about a 15 or 4 day limit. I had already positively accepted the proposition Mr. Burch had made, and was ready, willing, and able to go on with the contract, and am still ready, able, and willing to do so."

The defendant testified that he never agreed to sell his land on any terms except those stated in the instrument given Mrs. Burch; that his object in selling his land was to secure money to buy a home in Hopkins county, where he had been living for several years; and that, unless he could get one-third of the price of his land in cash, he could not purchase the place he wanted to buy in Hopkins, and his only object in selling his land would not be accomplished if the time of the first payment of one-third of the purchase money was extended 30 days. He further testified that he never authorized Burch to agree to furnish an abstract. This testimony is uncontradicted. Burch does not testify that defendant authorized him to make the agreement with plaintiff to furnish the abstract and allow him 30 days in which to examine the abstract and close the trade.

He says that when he made this agreement with plaintiff over the telephone defendant was in the telephone office near the door of the telephone booth, which was not closed tight, and he thinks Mr. Leewright understood the agreement, as he was listening. He also says:

"While I was talking to Mr. Daugherty over the telephone I communicated to Mr. Leewright what he was saying, and he did not in any manner oppose giving an abstract."

Burch further testified that before he approached defendant on the subject of selling his land he had a conversation with plaintiff looking to the purchase of this land; that plaintiff was at witness' house, and had just completed the purchase of a tract of land from him, and he asked plaintiff if he would like to buy more land on about the same terms, and plaintiff told him he would pay him a commission of one-half of 5 per cent. if he would buy defendant's land for him. Plaintiff testified that he did not understand that Burch was acting as his agent, but if he got the land for him he was to pay Burch a commission of one-half of 5 per cent. Burch did not expect any compensation from defendant, and the latter testified that Burch told him that he was not getting anything out of the deal.

[1, 2] Upon this evidence no other verdict than one in favor of defendant could have been properly rendered. We think this evidence conclusively shows that defendant never agreed to sell his land upon the terms insisted upon by plaintiff, and did not authorize Burch to make such agreement for him. The only authority given Burch by defendant was express and unequivocal in its terms, and no general custom among land dealers as to the seller furnishing an abstract and giving time for its examination could enlarge that authority. The evidence introduced as to such custom only goes to the extent of showing that in most cases contracts for the sale of land provided for the furnishing of an abstract by the seller and giving time to the purchaser for its examination, and that 30 days was not an unusual or unreasonable time for such examination. It is manifest that proof of the fact that contracts of this kind usually provided for furnishing an abstract and giving time for its examination does not require that in every contract for the sale of land such provisions must be implied. The plaintiff in this case did not rely upon any such custom, and before agreeing to take the land required that such provision be inserted in the contract. In the case of Colvin v. Blanchard, 101 Tex. 235, 106 S. W. 324, our Supreme Court quotes and applies the following rule stated by Mr. Pomeroy in his work on Specific Performance:

"Mr. Pomeroy expresses the rule applicable to this case as follows: 'Where the delegation of authority is express and special, the other party dealing with the agent cannot fall back on any larger implied powers, the limitations may relate to the manner and form of execut-

ing the contract, as well as the substantial terms which it shall contain; and in such a case the agent must keep within the restricted authority conferred upon him, and strictly pursue the method prescribed by his instructions.' Pomeroy, Specific Performance, 114, § 77; Thomas v. Joslin, 30 Minn. 388 [15 N. W. 675]; Holbrook v. McCarthy, 61 Cal. 216."

[3] We think this rule is equally applicable to the facts of this case as to those in the case cited. We are further of the opinion that the court could have properly instructed a verdict for defendant because there was no acceptance by plaintiff in writing of defendant's offer to sell. Plaintiff testified that he signed a contract which he had prepared, and delivered it and $100 earnest money to Burch. This was after defendant had refused to sell his land upon any other terms-than those stated in the instrument given to Mrs. Burch, and after the agency of Burch (if, in fact, he was ever the agent of defendant) had terminated. The contract prepared and signed by plaintiff provided that the defendant should furnish an abstract, and allowed plaintiff 30 days in which to make the cash payment, and contained other provisions not contained in the instrument executed by defendant. There is no evidence that this contract was delivered or tendered to defendant after plaintiff signed it, and if it could be regarded as a sufficient acceptance of defendant's offer, if delivered or tendered to defendant, the fact that it was not so delivered or tendered would make it ineffectual as such acceptance. In the case of Patton v. Rucker, 29 Tex. 402, our Supreme Court says:

"In order to their enforcement by the courts, contracts for the sale of lands must be evidenced by writing. Where the writing relied on contains all the particulars of a concluded contract, it is sufficient if it be signed by the party against whom it is sought to be enforced; but if, instead of being evidence of a concluded agreement, whatever may be its form, it is really a mere proposal, such a writing is turned into an agreement, and can be enforced in equity by the other party only by his acceptance of it in writing."

The instrument executed by defendant is clearly only a mere proposal, and does not evidence a concluded contract. It is wholly different from a receipt or a note given for the purchase money of land, which recites and evidences a concluded agreement, and may therefore be enforced against the party who signs it. The instrument signed by defendant being only a proposal or offer to sell his land upon the terms named therein, and no acceptance thereof in writing by the plaintiff being shown, it is unenforceable. Foster v. New York & Texas Land Co., 2 Tex. Civ. App. 505, 22 S. W. 260.

These conclusions make it unnecessary for us to discuss the several assignments presented in appellant's brief.

If any error is shown in the rulings of the trial court, such error was harmless, because, upon the undisputed evidence, no other judgment than one in favor of defendant could have been properly rendered. It follows that the judgment of the court below should be affirmed; and it has been so ordered.

Affirmed.