Charles F. ENGLISH et ux., Appellants,

v.

June MANN, Individually and as Ex'x, etc., et al., Appellees.

No. 12907.

Court of Civil Appeals of Texas.

Galveston.

Nov. 17, 1955.

Scardino & Regnier, Paul P. Regnier, Houston, for appellants.

Kenneth H. Aynesworth, Jr., Houston, for appellees.

GANNON, Justice.

The parties will be referred to as in the trial court.

This is an appeal by plaintiffs, Jessie Mae English and husband, Charles F. English, from a summary judgment denying their prayer for specific performance of a claimed contract for the sale and conveyance of land, and alternatively for damages for breach of that contract.

Defendants in the trial court were June Mann, widow of C. A. (Manzy) Mann, Deceased, who was sued individually and in her capacity as executrix of her deceased husband, and Frank E. Mann. The prayer for relief against defendant Frank E. Mann was limited to the alternative plea for damages and apparently predicated upon the further alternative that Frank E. Mann, who purported to act as attorney-in-fact for his brother, C. A. (Manzy) Mann, in the arrangements made the basis of the suit, misrepresented and exceeded his actual authority.

We have concluded that the undisputed and uncontradicted facts viewed most favorably from the standpoint of plaintiffs failed to show any written memorandum of a concluded agreement sufficient to constitute a compliance with the statute of frauds, Article 3995, Vernon's Ann.Civ. Tex.St., applicable to contracts for the sale of real estate such as that sued on here. The statute was pleaded as a defense.

The following facts which we gather from pleadings, affidavits and briefs of the parties are undisputed:

The real property involved is a tract of approximately 57 acres fronting on Clear Creek near Webster, Texas. It had been conveyed in July of 1950 by defendants, C. A. (Manzy) Mann and wife, June Mann, to C. F. English and wife, Jessie Mae English, by deed reciting the retention of the vendor's lien to secure unpaid purchase money. This transaction was rescinded by instrument of March 24, 1953, executed by C. A. Mann and plaintiffs, English and wife, thus placing title in defendants, C. A. Mann and wife, free and clear of any claim of C. F. English and wife, the vendees, in the deed of July, 1950.

After this rescission defendants, June Mann and her husband, moved on the property and at all material times it has been impressed with the homestead character.

By instrument of the 19th day of April, 1953, defendant, C. A. (Manzy) Mann, appointed his brother, the defendant, Frank E. Mann, his attorney-in-fact, authorizing him, among other things, *"with the joinder of my said wife, to sell and convey, * *,* all or any portion of said land and premises, * * * and *to execute in my name, any and all or instruments of every nature required to effectuate the powers hereby given and granted;* and to do any and all other things of every nature, with respect to my said property, and the management and protection thereof, and in any litigation respecting same, and in the * * * *conveyance of same,* that I could do if personally present and acting, * * *."* (Emphasis ours). If Frank E. Mann had authority to enter into a contract to sell, it must be found in the quoted language. The occasion for defendant, C. A. (Manzy) Mann, executing the above power-of-attorney to his brother was Manzy Mann's serious illness. Originally a party to the suit, Manzy Mann died pending its disposition in the trial court.

The Englishes were interested in repurchasing the Webster property and the Manns were not unwilling to resell it, provided there could be carved out of the 57 acre tract sufficient land to be retained by the Manns for a building site and to provide water frontage and allow for a boat slip plus a 40 foot roadway easement to provide ingress and egress to and from the building site, and provided further, of course, other repurchase terms and provisions could be agreed upon.

On April 29, 1953, Frank E. Mann, purporting to act as attorney-in-fact for C. A. (Manzy) Mann, but without joinder by June Mann, wife of Manzy Mann, addressed to C. F. English a letter the material portions of which are as follows:

"Houston, Texas,
"April 29, 1953.

"Mr. C. F. English
"5701 Harrisburg Blvd.
"Houston, Texas

"Dear Sir:

"In response to your statement that you desire to repurchase the Webster property which my brother, Manzy, recently took back from you for default in payments on the purchase money indebtedness, I submit to you the following *tentative* terms:

"There shall be excepted from the conveyance and retained by Manzy, a tract of land *including* a one-acre building site near the southeast corner of the entire tract, *plus suitable* land between the high ground on which the building site is to be located and Clear Creek, *to provide water frontage* and *allow for a boat slip,* and *plus a forty foot roadway easement including the area now occupied by two pipelines of the Humble Company and Warren Company,* for the purpose of providing ingress and egress to and from the building site, the *location* and *boundaries of such one-acre building Site,* and *of the water front land and roadway easement to be determined by Manzy, and Manzy to have the right,* at his expense, *to move over onto your adjoining land such portion of the levee around Pearce Lake as shall lie between Clear Creek and the building site to be retained by him.*

\*    \*    \*    \*    \*    \*

"As a condition to be performed before *we close any deal,* the push gate must be removed from its present location and Henderson Street opened for free use without any hindrance, without cost to Manzy, Manzy is to have the right to retain exclusive and peaceful possession of the entire premises for 90 days after the conveyance, or after the *signing of a contract of sale,* if a contract of sale is executed before actual conveyance of the property. A survey shall be made *before closing to fix the boundaries of the building site, water frontage and right of way easement,* the cost to be shared between you and

Manzy, and a supplement bringing the abstract up to date shall be obtained at your expense, such supplement and the balance of the abstract and previous supplements to be retained by the holder of the purchase money note until final payment is made.

"The letter agreement dated April 29, 1953, pertaining to occupancy of a portion of the premises by your son and his cattle shall not be altered by these *negotiations,* but shall remain in full force unless and until the deed shall be delivered to you as a result of these *negotiations,* and even then the provisions of this letter for 90 days exclusive and peaceful possession shall remain in force.

 "(signed) Very truly yours,
    "Frank E. Mann
    "Frank E. Mann
    "Attorney in Fact for
    "Manzy Mann"

(Emphasis ours). Note the arrangement proposed by the foregoing letter contemplates the acquirement by Manzy Mann of a dominant servitude in the nature of an incorporeal hereditament upon certain land of C. F. English. It is proposed that Manzy Mann is to have the right to move so much of the levee around Pearce Lake as shall lie between Clear Creek and the building site to be retained by Manzy Mann over onto Englishes' adjoining land.

Though it is alleged in plaintiffs' pleadings that the contemplated survey fixing the boundaries of the building site, water frontage and right-of-way easement was made and that such boundaries were agreed upon orally by all concerned and that plaintiffs orally accepted in toto the proposals made by Frank Mann as attorney-in-fact by his letter of April 29, 1953, as clarified by said survey, still plaintiff, Jessie Mae English, contradicts such allegations by affidavit filed in response to the motion for summary judgment wherein she sets out that upon learning that the Manns wanted to retain "almost three acres, we could not agree to it so they informed us they would keep all the place." Nothing to the contrary appears from any affidavits submitted by plaintiffs.

We have concluded, for several reasons, that the foregoing facts fail to show such a memorandum in writing of an agreement for the sale of land as will support an action either for specific performance or for damages. We will discuss only one of these, at any length.

It is obvious that the letter of Frank E. Mann as attorney-in-fact is not a memorandum of a concluded agreement for the sale of land. It may or may not be a definite offer but even if it be an offer, still there is no claim by plaintiffs that it has ever been accepted by them in writing.

In Patton v. Rucker, 29 Tex. 402, it is said of a letter relied on as a memorandum, "But it must be such a letter as shows an existing and binding contract, as contradistinguished from a pending negotiation, a concluded agreement, and not an open treaty, in order to bind the party from whom it proceeds." Other pertinent language from the opinion of the Supreme Court in that case is, "When the writing relied on contains within itself all the particulars of a concluded contract, it is sufficient if it be signed by the party against whom it is sought to be enforced; but if, instead of being evidence of a concluded agreement, whatever may be its form, it is really a mere proposal, such a writing is turned into an agreement, and can be enforced in equity by the other party *only by his acceptance of it in writing.* A proposal by one party, and an acceptance of that proposal according to the terms of it by the other, constituted a contract. It is not only necessary that the minds of the contracting parties should meet on the subject-matter of the contract, but they must communicate that fact to each other, so that both may know that their minds do meet, and it is then only that the mutual assent necessary to a valid contract exists, and *not until then that the contract is concluded."* (Emphasis ours).

The insufficiency, as a compliance with the statute of frauds, of a verbal acceptance of a written offer to sell land has been twice ruled by this Court. See Foster v. New York & Texas Land Co., 1893,

2 Tex.Civ.App. 505, 22 S.W. 260 (writ refused), and Daugherty v. Leewright, Tex.Civ.App., 1915, 174 S.W. 841.

Judge Williams, writing for the court in Foster v. New York & Texas Land Co., supra [2 Tex.Civ.App. 505, 22 S.W. 262], said, "It may, for the present, be conceded that Langerman's second letter to Whitty, of December 23, 1889, contains an offer to sell the land in controversy, sufficient, if properly accepted, to make a binding contract. The first question which then arises is, must such acceptance have been in writing? There is no pretense that Mrs. Foster did accept, in writing. Whether an oral acceptance of such an offer is sufficient is a question about which there is elsewhere a conflict of authority. The weight of authority is said by elementary writers to be in favor of the affirmative, but it is admitted that there is strong reason, and high authority, to sustain the opposite view. We consider that we are concluded by the decision of the supreme court of this state in Patton v. Rucker, 29 Tex. 402–408, where it is said: 'In order to their enforcement by the courts, contracts for the sale of lands must be evidenced by writing. Where the writing relied on contains within itself all the particulars of a concluded contract, it is sufficient, if it be signed by the party against whom it is sought to be enforced; but if, instead of being evidence of a concluded agreement,—whatever may be its form,—it is really a mere proposal, such a writing is turned into an agreement, and can be enforced in equity by the other party only by his acceptance of it in writing.' It is not in conflict with, nor modified by, the decisions in the cases of Crutchfield v. Donathon, 49 Tex. 691, and Watson v. Baker, 71 Tex. [739] 747, 9 S.W. 867. The first case was a suit on a note, which was a contract complete in itself, and in the last the offer and acceptance were both in writing; so that the question herein involved was neither presented nor discussed. These, and the case of Morris v. Gaines, 82 Tex. 255, 17 S.W. 538, are based upon facts which show either a writing, signed by the party to be charged, evidencing an under-taking complete in itself, and not dependent on a subsequent acceptance to conclude the contract, or else an offer made and accepted in writing. There was no complete contract in this case without acceptance of the offer. The decision in Patton v. Rucker holds that in such cases the acceptance must be in writing, in order to complete the contract. That case involved a discussion and decision of the question; for there was a verbal acceptance of the offer to sell, conclusively shown. * * *

"We do not think that the passage which we have quoted can be treated by us as a mere dictum."

Judge Pleasants, in Daugherty v. Leewright, supra [174 S.W. 844], expresses the principle as follows: "The instrument executed by defendant is clearly only a mere proposal, and does not evidence a concluded contract. It is wholly different from a receipt or a note given for the purchase money of land, which recites and evidences a concluded agreement, and may therefore be enforced against the party who signs it. The instrument signed by defendant being only a proposal or offer to sell his land upon the terms named therein, and no acceptance thereof in writing by the plaintiff being shown, it is unenforceable. Foster v. New York & Texas Land Co., 2 Tex.Civ.App. 505, 22 S.W. 260."

The text of 20 Tex.Jur., Statute of Frauds, Sec. 108, page 317, indicates a conflict of authority in Texas on the sufficiency of a written proposal or offer to sell land signed by the vendor as a memorandum under the statute of frauds when the written proposal or offer is only orally accepted. Patton v. Rucker, Daugherty v. Leewright, and Foster v. New York & Texas Land Co., supra, are cited for the proposition that such oral acceptance is insufficient. In support of the contrary view reference is made to Anderson v. Tinsley, Tex.Civ.App., 28 S.W. 121; Black v. Hanz, Tex.Civ.App., 146 S.W. 309; Holman v. Criswell, 13 Tex. 38, and Hazzard v. Morrison, Tex.Civ.App., 130 S.W. 244; Id., 104 Tex. 589, 143 S.W. 142.

Examination of the last cited cases, with the exception of Anderson v. Tinsley, reveals that the memoranda involved were, in every instance, memoranda of concluded agreements. The memorandum involved in Anderson v. Tinsley was, it is true, a mere proposal or offer which was only verbally accepted, and Judge Fly, writing for the San Antonio court, did say [28 S.W. 122], "A verbal acceptance on the part of appellant of the offer made, in writing, would have been sufficient, as the current of authority holds that the agreement or memorandum required by the statute of frauds in the sale of lands 'need not be signed by both parties, but only by him who is to be charged by it.' Crutchfield v. Donathon, 49 Tex. 692." The quoted statement cannot be reconciled with Patton v. Rucker; Daugherty v. Leewright, and Foster v. New York & Texas Land Co., supra, nor do we consider that Crutchfield v. Donathon, cited in its support, is apposite. This is plain, we think, from the following quotation from the Supreme Court's opinion in the Crutchfield case: "Our conclusion is, that this action was not brought upon a *contract for the sale of lands,* but upon a promissory note given for the purchase-money of land; that it was not shown by the evidence that the consideration of the note had failed; and that the plaintiff was entitled to his judgment on his note, and a foreclosure of the lien evidenced by the note.

"The parol evidence admitted did not vary or contradict the recitals of the note, and was clearly admissible. The objection was based on the idea that the note was a memorandum of a contract of sale of land under the statute." (Emphasis ours).

█ In line with the Patton, Daugherty and Foster cases, and contrary to Anderson against Tinsley, we hold that plaintiffs' claimed contract is unenforceable in any event against the asserted defense of the statute of frauds, among other reasons because plaintiffs are unable to show a memorandum of a concluded contract in support of their suit. The statute of course is available to the attorney-in-fact as a defense where, as here, the only damages claimed are for breach of contract. Little v. Childress, Tex.Civ.App., 12 S.W.2d 648; Id., Tex.Com.App., 17 S.W.2d 786. There is no count in fraud and deceit against Frank E. Mann for misrepresenting his authority. But even if there were, the statute of frauds would still be a defense to the agent.

█ Additionally, the offer, if it be such, evidenced by Frank Mann's letter of April 29, 1953, contemplated that C. A. (Manzy) Mann, as part of the understanding, was to acquire the right to maintain a levee on adjoining lands of C. F. English. This, of course, was an incorporeal hereditament, but nonetheless, such an interest in land as falls within the statute of frauds. See Miller v. Babb, Tex. Com.App., 263 S.W. 253. In short, the proposal contained in the letter partakes of the nature of an exchange of lands. There is no claim of any memorandum in writing signed by English which would bind him to make conveyance to C. A. (Manzy) Mann of the right to maintain the levee on the English land. Since the contract is thus, in any event, not binding on English, it is lacking both in mutuality of consideration and of remedy and unenforceable by any of the parties to it. See Clegg v. Brannan, 1921, 111 Tex. 367, 234 S.W. 1076.

Plaintiffs bottom their appeal upon seven points of error, as follows: The existence of genuine issues of material fact in respect to (a) whether or not the appellee, Frank E. Mann, had the authority to offer to reconvey the land to the appellants, (b) whether or not the appellee, June Mann, authorized and acquiesced the actions of the attorney-in-fact, Frank E. Mann, regarding the offer of sale, (c) whether or not the power-of-attorney authorized Frank E. Mann to tender a reconveyance of the property to the appellants, (d) whether or not appellee, June Mann, personally participated in the making of the contract of sale, by her actions, under the above mentioned power-of-attorney, (e) whether or

not the property in question was actually the homestead of the appellants or the appellees, (f) how much damages the appellants would be entitled to as a result of the action of the appellees, (g) whether or not the defendant, Frank E. Mann, did in fact, offer to reconvey the property to the appellants herein.

It is felt that what we have said demonstrates the lack of materiality of all of the foregoing matters, however we rule on the several points as follows: (a) Frank E. Mann had no authority under the power-of-attorney to offer to contract to sell as distinguished from a present conveyance. For an analogous application of the rule of strict construction governing powers of attorney see Gibbons v. Ewer, 2 Posey, Unrep.Cas. 250; (b) The second point apparently is based on waiver and ratification. Since the power-of-attorney was to represent C. A. (Manzy) Mann only C. A. (Manzy) Mann could waive or ratify unauthorized action of the agent without the "joinder" of June Mann; (c) The third point impresses us as inapplicable to the pleadings and facts; (d) The fourth point impresses us as irrelevant to any issue arising under the undisputed facts; (e) In view of our holding on the insufficiency of the letter of April 29, 1953, as a memorandum under the statute of frauds, this point becomes immaterial, however we do hold it to be undisputed that at all material times the property involved was impressed with the homestead character so as to defeat specific performance; (f) In view of our holdings, the sixth point becomes immaterial, however we note that the only damages claimed are the full actual market value of the property. There are no facts plead or established to show any difference between the market value of the property and the purchase price. It is, therefore, difficult to see that there existed in the case a genuine issue in respect to damages for breach of contract; (g) We are constrained to the view that the letter of April 29, 1953, was not an offer "to reconvey the property to the appellants" but only an invitation to negotiate. However, if it be viewed as an attempted offer, it is too lacking in definiteness of description of the property to be sold to constitute either a binding offer or to comply with the statute of frauds. We assume the "Webster property" mentioned in the letter of April 29, 1953, could be identified, and place our ruling on the lack of any description of the property to be "excepted from the conveyance" of the Webster property.

The judgment is affirmed.